UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VIVIANA MENDOZA, | ) | Case No. CV 04-8109-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Viviana Mendoza filed a complaint on September 28, 2004, seeking review of the Commissioner's decision terminating her disability benefits. The Commissioner answered the complaint on March 24, 2005, and the parties filed a joint stipulation on May 13, 2005.

**BACKGROUND**

**I**

On May 3, 1988 (protective filing date), plaintiff applied for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act ("the Act"), claiming

an inability to work since April 10, 1972, due to epilepsy.  Certified Administrative Record ("A.R.") 129-32, 159.  Plaintiff was granted SSI disability benefits with an onset date of May 1, 1988, based on a major seizure disorder meeting the requirements of Listing 11.02.[1]  A.R. 14, 139.

On October 11, 1996, the Social Security Administration ("SSA") reviewed plaintiff's case, A.R. 67-68, and on November 15, 1996, found she was no longer disabled.  A.R. 37-40.  The plaintiff sought reconsideration of SSA's decision, and, on April 3, 1997, an administrative hearing was held before disability hearing officer Hannah Cline, who found plaintiff continued to be disabled.  A.R. 41-66.

On September 18, 2000, SSA again reviewed plaintiff's case, A.R. 67-68, and on March 8, 2001, found plaintiff is no longer disabled.  A.R. 69-71.  The plaintiff sought reconsideration of SSA's decision, A.R. 72, and on January 18, 2002, an administrative hearing was held

---

[1] Listing 11.02 provides:

> Epilepsy - convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.  With:
> A.  Daytime episodes (loss of consciousness and convulsive seizures) or
> B.  Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. § 404, Subpt. P., App. 1.

before disability hearing officer Diane G. Hankinson ("DHO"), who found plaintiff's condition has improved and she is no longer disabled. A.R. 73-94. SSA adopted the DHO's findings, and on April 12, 2002, advised plaintiff her SSI benefits would be terminated. A.R. 95-97. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Peter J. Valentino ("the ALJ") on June 18, 2003. A.R. 108, 457-85. On August 28, 2003, the ALJ found plaintiff's condition has improved and she is no longer disabled. A.R. 11-21. The plaintiff appealed this decision to the Appeals Council, which denied review on July 29, 2004. A.R. 6-10.

**II**

The plaintiff, who was born on April 11, 1970, is currently 36 years old. A.R. 129, 461. She has a high school education and no previous work experience. A.R. 163, 461-62, 471.

The plaintiff suffers from complex partial seizures[2] and simple partial seizures,[3] and Roger L. Huf, M.D., a neurologist, has treated

---

[2] A complex partial seizure is "a type of partial seizure associated with disease of the temporal lobe and characterized by varying degrees of impairment of consciousness; the patient performs automatisms and is later amnesic for them. An attack is often preceded by a hallucinatory aura, most often visual or auditory but sometimes involving the other senses." Dorland's Illustrated Medical Dictionary, 1619 (29th ed. 2000).

[3] A simple partial seizure is "the most localized type of partial seizure, with a discharge that is predominantly one-sided or that presents localized features, and without loss of consciousness. If it progresses to another kind of seizure it is called an aura." Id.

her seizures since 1987.  A.R. 273-316, 351-67.  For the most part, Dr. Huf prescribes plaintiff Tegretol[4] for plaintiff's seizures.  A.R. 284-85, 303-04, 436-56.  The diagnosis and treatment of plaintiff's seizures is well documented, A.R. 295-96, and includes plaintiff's hospitalization in 1988, A.R. 276-77, an MRI in 1988, and electroencephalograms ("EEG") in 1988, 1991, 1993 and 1996.  A.R. 275, 277, 286-87, 311-12, 451-53.  On June 23, 1995, Dr. Huf stated:

> [Plaintiff] has been under my care for many years now.  She has a structural abnormality of the brain and in association with this, she has seizures.  Her seizures are under marginally good control.  I have noted in the past that stress related factors have been a seizure threshold lowering event for her.  She has related to me that recently her life has been particularly stressful and that there has been a recurrence of seizures. . . .

A.R. 449.

On November 19, 1996, Dr. Huf noted plaintiff experienced complex partial seizures about five times per month, and those seizures were treated with Tegretol.  A.R. 443-46.  On November 24, 1999, Dr. Huf noted plaintiff's last seizure, which lasted for about 10 minutes, was in October 1999, and plaintiff lost consciousness.  A.R. 441.

---

[4] "Tegretol is used in the treatment of seizure disorders, including certain types of epilepsy. . . . [¶] . . . The drug is also used to treat migraine headaches and 'restless legs.'" The PDR Family Guide to Prescription Drugs, 654 (8th ed. 2000).

4

Additionally, Dr. Huf noted plaintiff has frequent and severe headaches, and seizures once every two months. Id. On June 29, 2000, Dr. Huf opined plaintiff was doing very well, had no seizures but had severe headaches, and by December 4, 2000, Dr. Huf reported plaintiff was having infrequent headaches and no seizures. A.R. 439-40.

On March 20, 1989, Archie J. Rellas, a clinical psychologist, examined plaintiff and conducted psychological testing, finding plaintiff has "organic brain damage [that] is highly localized and involves seizures." A.R. 321-31. Wechsler Adult Intelligence Scale-Revised ("WAIS-R") testing showed plaintiff is in the low-average range of general intelligence, has poor academic achievement and organic dysfunction with lesions in the left cerebral hemisphere. A.R. 322. The Bender-Gestalt test showed plaintiff has an identity problem, while the Memory for Design test showed plaintiff's memory and immediate recall are good. Id.

On March 2, 2001, Archimedes Garcia, M.D., a nontreating, nonexamining psychiatrist, opined plaintiff has a borderline IQ and is "moderately" limited in her ability to understand, remember, and carry out detailed instructions, but is otherwise not significantly limited. A.R. 386-403.

On November 18, 2001, plaintiff was found unconscious and taken to an emergency room, where she was diagnosed with encephalopathy and Tegretol toxicity; however, she was discharged the next day. A.R. 404, 409-10.
//

1    On November 19, 2001, a nontreating, nonexamining physician
2 opined plaintiff has no exertional limitations, but can never balance
3 or climb ladders, ropes, or scaffolding, and must avoid all exposure
4 to hazards.  A.R. 423-30.

6    Medical expert Betty Grant-Anderson, M.D., testified at the
7 administrative hearing that plaintiff has a below average IQ and
8 partial or partial complex seizures, which seem to be stable when she
9 is on a regular dose of Tegretol.  A.R. 474-79.  Dr. Grant-Anderson
10 opined:  plaintiff does not meet or equal a listed impairment;
11 plaintiff can occasionally lift and/or carry up to 50 pounds,
12 frequently lift and/or carry up to 25 pounds; walk or stand up to an
13 hour at a time and four hours a day, and sit for up to 6 hours a day;
14 and she would have to work in an environment that minimizes her
15 stress, involves limited public contact, and does not expose her to
16 hazards or extremes of temperature.  A.R. 477-78.

## DISCUSSION

### III

20    The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
21 review the Commissioner's decision terminating plaintiff's disability
22 benefits to determine if her findings are supported by substantial
23 evidence and whether the Commissioner used the proper legal standards
24 in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th
25 Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

27    An individual is "disabled" for the purpose of receiving benefits
28 under the Act if she is unable to engage in any substantial gainful

activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability."  Bellamy v. Sec'y of Health & Human Serv., 755 F.2d 1380, 1381 (9th Cir. 1985); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983).

A recipient whose condition has improved medically so she is able to engage in substantial gainful activity is no longer disabled.  42 U.S.C. § 1382c(a)(4); 20 C.F.R. § 416.994; Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459-60 (9th Cir. 1995).  A medical improvement is:

> any decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [the recipient was] disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the recipient's] impairment(s). . . .

20 C.F.R. § 416.994(b)(1)(i), (2)(i).  In assessing whether there is a medical improvement, the ALJ must **first** compare the severity of the recipient's current impairments to the severity of the impairments

when the recipient most recently was found to be disabled.  20 C.F.R. § 416.994(b)(1)(vii).  If the recipient's current impairments meet or equal the severity of an impairment listed in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1, the recipient's disability continues.  20 C.F.R. § 416.994(b)(5)(i).  Similarly, if there has been no decrease in medical severity, there has been no medical improvement.  20 C.F.R. § 416.994(b)(5)(ii).  **Second**, if medical improvement is shown through objective medical evidence, the ALJ must compare the recipient's current residual functional capacity ("RFC") to her RFC at the time she most recently was found to be disabled to determine whether the medical improvement is related to the recipient's ability to do work.[5]  20 C.F.R. § 416.994(b)(2)(ii-iii), (b)(5)(iii).  If the medical improvement is unrelated to the recipient's ability to do work, the ALJ must consider whether certain enumerated exceptions apply.  20 C.F.R. § 416.994(b)(3-4), (b)(5)(iv).  If no exception applies, the recipient's disability continues.  20 C.F.R. § 416.994(b)(5)(iv).  **Third**, if the medical improvement is related to the recipient's ability to do work, the ALJ must determine whether the recipient's current impairments are severe; if not, the recipient is no longer disabled.  20 C.F.R. § 416.994(b)(5)(v).  **Fourth**, if the recipient's current impairments are severe, the ALJ must determine whether the recipient, based on her current RFC, can perform her past relevant work; if so, the recipient is no longer

---

[5] In situations, such as here, where the recipient's impairment was found to have met or equaled a Listing, no prior RFC assessment would have been performed; however, "[i]f there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to [the recipient's] ability to work."  20 C.F.R. § 416.994(b)(2)(iv)(A).

8

1 disabled.  20 C.F.R. § 416.994(b)(5)(vi).  **Fifth**, if the recipient,
2 based on her current RFC cannot perform her past relevant work, then
3 the ALJ must determine whether the recipient, based on her age,
4 education, work experience and current RFC, is capable of performing
5 other work; if so, the recipient is no longer disabled.  20 C.F.R. §
6 416.994(b)(5)(vii).

8    Here, the ALJ found plaintiff was disabled beginning May 1, 1988,
9 "and again at the comparison point decision date of April 3, 1997."
10 A.R. 19.  The ALJ next found plaintiff does not now have a severe
11 impairment or combination of impairments.  Id.  Furthermore, the ALJ
12 found plaintiff's medical condition has improved since April 3, 1997,
13 and such improvement is related to her ability to do work.  Id.  The
14 ALJ next found plaintiff has a severe impairment or combination of
15 impairments and no past relevant work.  A.R. 19-20.  Finally, the ALJ
16 determined plaintiff could perform a significant number of jobs in the
17 national economy as of March 1, 2001; thus, she is no longer disabled.
18 A.R. 20.

20    The plaintiff challenges the ALJ's decision on several grounds,
21 including that she was not represented at the administrative hearing
22 before the ALJ and she did not waive her right to counsel at that
23 hearing.

**IV**

26    "A Social Security [recipient] has a statutory right, which may
27 be waived, to be represented by counsel before an ALJ."  Graham v.
28 Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam); Binion v.

9

Shalala, 13 F.3d 243, 245 (7th Cir. 1994); 42 U.S.C. § 406.  However, the "[l]ack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings."  Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (quoting Vidal v. Harris, 637 F.2d 710, 714-15 (9th Cir. 1981)).  Thus, the pertinent issue is whether the administrative proceeding was fair, not whether plaintiff properly waived her right to counsel.  Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1992); Vidal, 637 F.2d at 714.

"'In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the [recipient's] interests are considered.'"  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted); Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005); see also Higbee, 975 F.2d at 561 ("We have long recognized that the ALJ is not a mere umpire at [an administrative hearing], but has an independent duty to fully develop the record. . . .").  When, as here, a recipient or claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Higbee, 975 F.2d at 561 (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)); Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).  Moreover, the ALJ's duty is heightened where the recipient or claimant may have a mental impairment and, thus, be unable to protect her own interests.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Higbee, 975 F.2d at 562.

Here, plaintiff cites numerous ways in which the ALJ failed to

10

1  properly develop the record, including:  not obtaining an updated
2  opinion from Dr. Huf regarding her condition; not conducting a
3  detailed inquiry of plaintiff regarding her condition; failing to
4  obtain the records from "Dr. Roger Belhoff";[6] failing to address the
5  x-rays or other documentation she brought to the administrative
6  hearing; failing to consider her headaches; failing to obtain her
7  school records; failing to address "gaps" in her records; failing to
8  question her or her brother regarding limitations caused by her
9  condition; and failing to pose an adequate hypothetical question to
10 the vocational expert.  Jt. Stip. at 11:17-16:18, 22:6-24:14.

12     A review of the administrative record shows plaintiff is correct.
13 The ALJ failed to develop the record in several important aspects.
14 First, the ALJ made absolutely no inquiry regarding plaintiff's
15 headaches although the record shows plaintiff was experiencing severe
16 headaches prior to the date her disability benefits were terminated,
17 see, e.g., 439-41, and plaintiff's brother stated at the
18 administrative hearing that she experiences headaches.  A.R. 473.
19 Second, the ALJ cursorily examined plaintiff regarding the nature and
20 frequency of her seizures, eliciting only that plaintiff last
21 experienced a "grand mal" seizure the week prior to the administrative
22 hearing,[7] and not eliciting any other information about plaintiff's

---

[6] This claim is specious since it is clear "Dr. Roger Belhoff" is a misspelling of Dr. Roger L. Huf, plaintiff's treating neurologist.  See, e.g., A.R. 487-88 ("Roger Belhoff [phonetic]").

[7] The colloquy between the ALJ and plaintiff was:

[ALJ]:   Okay.  So, tell me in addition to taking your medicine, do you do anything else for your

11

1  seizures from her brother.[8]  Moreover, the ALJ elicited absolutely no
2  testimony from plaintiff or her brother regarding the effect
3  plaintiff's condition has on her ability to perform work-related

---

```
           medical problems?
[PL]:      Like what?
[ALJ]:     Like you're not getting any kind of therapy,
           physical therapy or anything like that,
           right?
[PL]:      No.
[ALJ]:     You take your medicine.
[PL]:      Yes.
[ALJ]:     And is that controlling your seizures, the
           medicine?
[PL]:      It depends.
[ALJ]:     When you say depends, what do you mean?  If
           you take it, the seizure is controlled?
[PL]:      Sometimes.
[ALJ]:     Sometimes.  And when was the last time you
           experienced any seizure problem?
[PL]:      Last week.
[ALJ]:     Last week.  Do you know what kind it was?
           Was it a small seizure or a major seizure?
[PL]:      Well, my mom said it's a grand mal seizure.
[ALJ]:     A grand mal seizure you had last.  Your mom
           told you, you had a grand mal seizure last
           week?
[PL]:      Yeah, she told me.
[ALJ]:     You don't remember having one?
[PL]:      No.
[ALJ]:     Do you remember having any kind of a seizure
           problem besides what your mother tells you
           when you have a grand mal?
[PL]:      No.
```

A.R. 469-70.

[8] The plaintiff also answered a seizure questionnaire on February 12, 2001; however, the information provided is cursory and incomplete.  A.R. 221-23.  For instance, the plaintiff did not answer the question about the frequency of her seizures and did not identify the year in which her most recent seizures occurred.  A.R. 224.  Nevertheless, the ALJ did not seek to clarify these omissions.

12

activities. As the ALJ "made no effort, and gave plaintiff little opportunity to, elaborate further on [this] crucial question[,]" the ALJ failed in his duty to develop the record. Cox, 587 F.2d at 991; Vidal, 637 F.2d at 714-15.

Moreover, the administrative record does not contain any opinion by a treating or examining physician regarding plaintiff's RFC, and the ALJ failed to get such an opinion. Thus, the ALJ also did not fully and fairly develop the record in this regard. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). As the Eighth Circuit has held:

> In the case at bar, there is no medical evidence about how [plaintiff's] impairments affect [her] ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [plaintiff's] RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the [recipient] ordinarily do not constitute substantial evidence on the record as a whole. Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits.

Id. (citations omitted); see also Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any

individual."); Nelson v. Heckler, 712 F.2d 346, 348 (8th Cir. 1983) (per curiam) ("'[T]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best.'" (citation omitted)).  For the foregoing reasons, substantial evidence does not support the Commissioner's decision that plaintiff's medical condition has improved and she is no longer disabled. Tonapetyan, 242 F.3d at 1150; Nevland, 204 F.3d at 858.

## V

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  "Generally when a court . . . reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

Here, "[s]ince the [plaintiff] was not represented by counsel and the [ALJ] did not 'scrupulously and conscientiously probe into, inquire of and explore for all relevant facts,' the interests of justice demand that the case be remanded."[9]  Vidal, 637 F.2d at 715

---

[9] Having so concluded, this Court need not reach the other issues plaintiff raises, none of which would warrant greater relief than herein granted, and each of which can be addressed on remand.

(quoting Cox, 587 F.2d at 991); Nevland, 204 F.3d at 858; see also Tonapetyan, 242 F.3d at 1150-51 (reversing and remanding when ALJ failed to properly develop the record).  Upon remand, the ALJ should, at a minimum, allow plaintiff to present further evidence regarding her headaches and seizures and the manner in which these conditions affected her ability to work at the time her benefits were terminated and the ALJ should seek an opinion from plaintiff's treating neurologist, Dr. Huf, regarding plaintiff's RFC at the time her benefits were terminated.  Nevland, 204 F.3d at 858.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted, and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:   June 26, 2006               /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-8109.mdo
6/26/06

15